IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


DANIEL H. GASKINS,

                        Petitioner,

          v.                              CASE NO. 14-3070-RDR

COLONEL SIOBAN LEDWITH,
Commandant, USDB,

                        Respondent.


<u>MEMORANDUM AND ORDER</u>

This pro se petition for writ of habeas corpus was filed pursuant to 28 U.S.C. § 2241 by Mr. Gaskins whe he was an inmate of the United States Disciplinary Barracks, Fort Leavenworth, Kansas (USDB). Petitioner seeks to challenge his placement on "Mandatory Supervised Release" on several grounds. Respondent was ordered to show cause and has filed his Answer and Return (Doc. 10). Petitioner has filed his Traverse (Doc. 16). Having examined all materials filed, the court dismisses the petition for failure to show exhaustion on all claims and failure to state a claim for relief under § 2241.

## I.  FACTUAL BACKGROUND

Mr. Gaskins is a former active duty member of the United States Army. In 2007 while he was stationed in Italy, he committed offenses against his sponsor's 12-year old daughter

1

and was reassigned to a different duty station where he assaulted another female acquaintance. *United States v. Gaskins*, 72 M.J. 225, 228 (CAAF 2013). As a result, he was convicted by military court-martial on February 8, 2008, of carnal knowledge in violation of Article 120, UCMJ (sexual intercourse with a person under sixteen (16) years of age), of indecent acts with a child, and of indecent assault, both in violation of Article 134, UCMJ.[1]   *Id.*   His convictions and sentence were modified and eventually affirmed on direct appeal ending in July 2013.

Shortly after Mr. Gaskins was convicted, he was confined at the USDB. In February 2009, February 2010, and February 2011, he submitted requests for clemency to the Army Clemency and Parole Board (AC&PB). The AC&PB denied these requests in April 2009, March 2010 and March 2011, respectively. After petitioner's sentence was set aside in February 2011, his status was changed to "pre-trial confinee." During the interim between the date the ACCA set aside petitioner's original sentence and

---

[1]   Petitioner was initially sentenced to confinement for 12 years, forfeiture of all pay and allowances, reduction to E-1, and a dishonorable discharge. *Id.* In February 2011, the Army Court of Criminal Appeals (ACCA) affirmed the convictions but set aside Mr. Gaskins' sentence and remanded to the trial court level for a sentence rehearing. *Id.* at 227. At the sentence rehearing, a military judge reduced petitioner's confinement to 9 years. *Id.* at 229. On subsequent appeal to the Court of Appeals for the Armed Forces (CAAF), the findings of guilt against Mr. Gaskins were reduced to carnal knowledge (sexual intercourse with a person under sixteen (16) years of age) and assault consummated by a battery. *Id.* at 236. The CAAF remanded the case to the ACCA for resentencing in light of the modified findings of guilt. *Id.* On July 22, 2013, the ACCA reduced petitioner's confinement to 8 years and 6 months.

the date a new sentence was adjudged in October 2011, he had no adjudged sentence and was not considered for clemency or parole during this interim period.

In July 2013, petitioner submitted a parole and clemency request together with a "Supervision Release Plan." On September 19, 2013, the AC&PB denied his request for clemency and parole and placed Mr. Gaskins on the MSR program instead. Petitioner was notified that the AC&PB directed his placement on MSR and that his term of supervision would expire on July 22, 2016, which is his Maximum Release Date. He was informed that while on MSR he would be required to comply with the conditions delineated in the "Certificate of Supervised Release" Doc. 8-1 at 36. Mr. Gaskins' was free to remain in prison, and his departing the USDB upon being granted release constituted his agreement to the MSR conditions.

Petitioner filed this action in April 2014. He was thereafter released under the MSR program on July 17, 2014, which was his Minimum Release Date. This date was more than two years prior to the expiration of petitioner's sentence of 8 years and 6 months.

## II.  GROUNDS ALLEGED AND CLAIM FOR RELIEF

Petitioner does not seek to challenge his convictions or sentence. Instead, he presented four grounds for relief in his

petition that mainly challenge the execution of his sentence. All four grounds assert a violation of Due Process. As facts in support of Ground (1), petitioner alleged that his adjudged sentence is "going to be unlawfully extended" due to "unlawful forfeitures of good conduct time (GCT) and earned time abatement (ETA) relating to the Mandatory Supervised Release program" and by attempts to force him to waive his GCT/ETA. As facts in support of Ground (2), he alleged that the USDB and the AC&PB are not following their own regulations and directives concerning prisoner release and revocation of GCT and ETA. In support of Ground (3), he alleged that he did not receive two of the four parole hearings for which he was eligible and was deprived of the opportunity for early release as a result. In support of Ground (4), he alleged that "unlawful revocations" of his GCT and ETA and the "illegal addition of mandatory supervised release" have interfered with his constitutional rights by "impeding international travel, marry, collect property, raise children."

While the relief available in a federal habeas corpus petition generally is release from allegedly unlawful confinement, Mr. Gaskins did not specify in his petition the particular relief being sought. After the court issued its order to show cause to respondents, petitioner filed a "Motion

for Prohiborty (sic) Injunction" (Doc. 5).  In this motion, Mr.
Gaskins asks the court to "prohibit the enforcement of the Army
Clemency and Parole Board's (ACPB) mandatory conditions" imposed
upon him "while on involuntary Mandatory Supervised Release" and
to prohibit the AC&PB, USDB, or the United States Probation
Office (USPO) from forcing petitioner to attend any mandated
programs and "violat(ing) petitioner's release" for failure to
comply with said conditions until a ruling is entered in this
case.  Respondent opposes this motion. *See* (Doc. 8).

### III.   PROCEDURAL HISTORY

Respondent filed a very comprehensive Answer and Return
(A&R) together with 753 pages of attachments.  In the A&R,
respondent discusses each ground in the petition and asserts,
among other things, that petitioner's due process claims are
conclusory and that he fails to state sufficient facts in
support of Grounds (2), (3) and (4).

Petitioner responded to the A&R by filing his Traverse.  In
his Traverse, he does not argue that he stated sufficient facts
in his petition.  Therein, he alleges many additional facts and
arguments that should have been, but were not, set forth in his
petition.  In his Traverse, petitioner for the first time seeks
to be "removed from supervised release."  In addition, he seeks
for the first time an award of damages "due to Respondent

5

depriving" petitioner of "the opportunity of being released and earning a living" and as "reimbursement" from "the government for the purpose of easing the occupational and residential transition that will be required due to the unlawful implementation of MSR on petitioner."

## IV.  LEGAL STANDARDS

### A.  Exhaustion and Waiver

This case presents issues of exhaustion and waiver. [B]efore seeking collateral review in the civilian system, a military prisoner must exhaust "*all* available military remedies." *Banks v. United States*, 431 Fed.Appx. 755, 757 (10th Cir. 2011). This requires the petitioner to exhaust not just military administrative remedies, but court remedies as well. *Id.* (citations omitted). "And the failure to exhaust available military remedies on *any* claim generally requires a civilian court to dismiss without prejudice the petition in its *entirety.*" *Id.* "Complementing this exhaustion requirement is the doctrine of procedural default" or waiver, that "can operate to bar a military prisoner from ever raising a claim in a civilian court that he once could have presented to military officials but no longer may." *Id.* In *Huschak v. Gray*, 642 F.Supp.2d 1268, this court set forth the following applicable standards on exhaustion and waiver.

The Tenth Circuit discussed the general principles of exhaustion and waiver in *Roberts v. Callahan*, 321 F.3d 994, 995 (10th Cir.) *cert. denied*, 540 U.S. 973, 124 S.Ct. 447, 157 L.Ed.2d 323 (2003):

> The federal civil courts have limited authority to review court-martial proceedings. *Burns v. Wilson*, 346 U.S. 137, 142, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953). If the grounds for relief that Petitioner raised in the district court were fully and fairly reviewed in the military courts, then the district court was proper in not considering those issues. *See id.; see also Lips v. Commandant, United States Disciplinary Barracks*, 997 F.2d 808, 811 (10th Cir.1993). Likewise, if a ground for relief was not raised in the military courts, then the district court must deem that ground waived. *See Watson v. McCotter*, 782 F.2d 143, 145 (10th Cir.1986). The only exception to the waiver rule is that a petitioner may obtain relief by showing cause and actual prejudice. *See Lips*, 997 F.2d at 812.

*Id.* at 1274.   Under *Roberts*, "the court should not review petitioner's claims if these claims have received full and fair review by the military courts, or if petitioner waived the opportunity to present the claims to the military courts."  *Id.* at 1275.   However, a habeas petitioner is not required to exhaust state remedies if exhaustion would be futile. *Wilson v. Jones*, 430 F.3d 1113, 1118 (10th Cir. 2005) *cert. denied,* 549 U.S. 943 (2006).

**B.  *Habeas Corpus Relief***

Petitioner brings this action as a petition for writ of

habeas corpus pursuant to 28 U.S.C. § 2241.  Under § 2241(c)(3),
habeas corpus relief is available to a prisoner who is in
custody "in violation of the Constitution or laws and treaties
of the United States."

### C.  *Mandatory Supervised Release*

The MSR program was created in 2001, several years before
petitioner committed his offenses.  It is one of "a variety of
early release procedures" for military prisoners.  *Miller v. Air
Force Clemency and Parole Bd.*, 2001 WL 4402497 at *4.  MSR is a
valid Department of Defense system of parole.  *See Huschak*, 642
F.Supp.2d 1268 and 10 U.S.C. § 952(a)("The Secretary concerned
may provide a system of parole for offenders who are confined in
military correctional facilities and who were at the time of
commission of their offenses subject to the authority of that
Secretary.").  The MSR parole program is an involuntary form of
parole set up as the default early release mechanism for inmates
not granted traditional parole.  Department of Defense
Instruction (DoDI) 1325.7 at 6.20.1.  DoDI 1325.7 at 6.20.1.
provides:

> The supervised release of prisoners who are not
> granted parole prior to the minimum release date is a
> highly effective technique to provide an orderly
> transition to civilian life for released prisoners and
> to better protect the communities into which such
> prisoners are release. Accordingly, it shall be the
> policy of the Department of Defense to use supervised
> release in all cases except where it is determined by

the   serve   Clemency   and   Parole   Boards   to   be
inappropriate.

*Id.*   The Army MSR program is administered by the AFC&PB which is
vested   with   the   "highly   discretionary"   authority   to   decide
whether to grant parole, and to decide which type of parole is
appropriate.   *See* DoDI 1325.7 at 6.16.

Prisoners   in   the   MSR   program   are   "required   to   serve   the
balance   of   [their]   sentence[s]   outside   of   confinement   on   the
condition   that   [they]   abide   by   certain   rules."   *Huschak*,   642
F.Supp.2d   at   1276.    A   military   prisoner's   "release   from   the
confinement   facility   constitutes   acceptance   of   the   terms   and
conditions   of   supervised   release."    DoDI 1325.7 at 6.20.8 and
6.20.4.

**D.   *Challenges to Conditions of Release on MSR***

When   constitutional   claims   are   aserted   that   involve   the
execution   of   a   prisoner's   federal   sentence,   habeas   relief   under
§ 2241 is appropriate process.   *Davis v. Roberts*, 425 F.3d 830,
833 (10th Cir. 2005); *McIntosh v. United States Parole Comm'n*,
115 F.3d 809, 812 (10th Cir. 1997).   This includes challenges to
good-time   credit   and   parole   procedures.    *United   States   v.*
*Furman*, 112 F.3d 435, 438-39 (10th Cir. 1997); s*ee also Jiminian*
*v. Nash*, 245 F.3d 144, 146 (2nd Cir. 2001)(§ 2241 includes such
matters   as   the   administration   of   parole).    The   Seventh   Circuit
has   reasonably   held   that   habeas   corpus   rather   than   a   civil

rights action is the appropriate remedy for a prisoner seeking release from restrictions imposed upon parole, reasoning the conditions imposed on parole constitute and "define the perimeters" of the parolee's confinement. *See Williams v. Wisconsin*, 336 F.3d 576, 579 (7th Cir. 2003). District courts have likewise reviewed and decided a military prisoner's § 2241 habeas petition challenging the constitutionality of the prisoner's placement on MSR and the administration of MSR conditions. *See Gonzales v. Commandant, United States Disciplinary Barracks*, 949 F.Supp.2d 688 (E.D.Ky. 2013), *aff'd* (6th Cir. June 4, 2014); *Miller v. Air Force Clemency and Parole Board*, 2011 WL 4402497, *6 (D.Md. 2011)(unpublished), *aff'd* 472 Fed.Appx. 210 (4th Cir. 2012).

## V. DISCUSSION

After having considered the petition together with the Traverse, the court separates and clarifies petitioner's claims into the following claims: (1) his placement on MSR unlawfully extended his adjudged sentence in that it amounted to additional punishment and "the illegal addition of mandatory supervised release"; (2) the forced forfeiture of his GCT and his ETA upon his MSR placement was without due process and unlawful; (3) the USDB and the AC&PB failed to follow their own regulations regarding revocation of GCT and ETA; (4) the USDB and the AC&PB

10

failed to follow their own regulations regarding release of prisoners; (5) petitioner did not receive two parole hearings, which deprived him of opportunities for early release; and (6) conditions imposed upon petitioner's MSR release "interfere with" his constitutional rights by impeding his international travel.

### A.   Exhaustion and Waiver

In its show cause order, the court directed respondent to describe, with specificity and with reference to applicable regulations if any, the administrative remedies that are available at the USDB and those available within the agency that includes the Army Clemency and Parole Board for military prisoners like petitioner to challenge decisions regarding GTC and ETA as well as decisions regarding release on parole or mandatory supervised release.  Respondent was likewise directed to describe the judicial remedies that are available, if any, for such challenges within the military courts including the scope of the remedies referred to as a petition for extraordinary relief or military habeas corpus.  Respondent fully responded to this directive.

In the A&R, respondent provides authority indicating that, even though judicial review of a decision by military C&PB is limited, military courts will consider claims regarding post-

trial confinement and release conditions that are alleged to
unlawfully increase a prisoner's punishment.   A&R (Doc. 12) at
15 (citing e.g., *United States v. Pena*, 64 M.J. 259, 265 (CAAF
2007); *Fredenburg v. United States*, 2009 WL 4250099 (AFCCA
2009)).   Petitioner's claims that his sentence has been
unlawfully extended by MSR are clearly among those types of
claims.   Respondent states and shows that petitioner has not
presented "his unlawful sentence augmentation" claims to either
the ACCA or the CAAF.   A&R (Doc. 12) at 18.   Petitioner contends
in his Traverse that there are no military remedies for his
claims concerning MSR release and to require exhaustion would be
futile.   The court finds that military remedies were available
for petitioner's claim delineated by the court as (1) above, and
dismisses this action due to petitioner's failure to show that
he exhausted the remedies available in the military courts on
this claim, which is his main claim for relief.

### B.   *Failure to State a Claim*

Even if the court were to find that Mr. Gaskin either had
fully exhausted his military remedies or had none, or that total
exhaustion is not required, this action must be dismissed
because petitioner fails to state a valid claim for relief.   Mr.
Gaskins' challenges to the MSR program in general and his
conditional release under that program were rejected in *Huschak*

*v. Gray*, 642 F.Supp.2d 1268.  In *Huschak*, this court found the following: the MSR program is a lawful system of parole authorized by Congress in 10 U.S.C. § 952, *id.* at 1276; a military prisoner has no right to expect that he will serve less than his full sentence, *id.* at 1277; the AC&PB is statutorily authorized to place a military prisoner on MSR and to impose involuntary conditions; MSR does not violate a military prisoner's "liberty interest in good conduct time and earned abatement days without due process, *id.* at 1278; petitioner received the benefit of his good conduct time by its positive impact upon his Minimum Release Date as he was released earlier than if he had not received credit for good conduct, *id.*; alleged "involuntary" placement on MSR does not deprive one of good conduct time without due process, *id.* at 1279; "there would be no point in MSR, if good conduct time required release from confinement without conditions before MSR was ordered," *id.*; MSR is not ordered by a court and does not extend the sentence of a defendant beyond the full term of confinement announced by the court at sentencing, *id.* at 1280; MSR is not a separate punishment and is not the same as the federal civilian system of supervised release, which is imposed by a civilian court and actually may lengthen a sentence, *id.* at 1276; MSR is not additional punishment and does not increase a military sentence

13

even if it results in revocation, *id.* at 1277; and MSR is different from federal civilian supervised release and does not have to be announced as part of the sentence, *id.*

The court further finds that there is nothing in petitioner's arguments which would suggest that the procedures used by the AC&PB prior to imposing MSR in his case violated due process.

Petitioner's claim that he was denied two parole hearings utterly failed to state a ground for relief in the petition because no facts were alleged in support. The additional facts alleged to support this claim in petitioner's Traverse are not sufficient to controvert the records and argument in the Answer and Return, which plainly show that timely parole hearings were held according to regulations and petitioner was denied parole in accordance with the applicable regulations. In any event, military parole is "highly discretionary" and thus Mr. Gaskin had no federal constitutional right to release on parole. Furthermore, if petitioner is claiming that he was denied two parole hearing while he was confined, this claim was mooted by his final hearing. If petitioner is claiming that he was denied parole hearings after his release on MRS, respondent shows that he could have applied for parole even after his release.

Petitioner's claims that the USDB and the AC&PB violated

14

due process and failed to follow their own regulations regarding forfeiture of his GCT and ETA and his conditional release are not adequately supported with facts or legal authority. Petitioner was notified by published regulations providing that his GCT and ETA were forfeited upon MSR release.  See DoDI 1325.07, A&R (Doc. 12) at 19.   Thus, there was no due process violation.   Petitioner appears to rely upon regulations in effect prior to the creation of MSR that do not apply in his case.  Respondent shows in the A&R that the decision to place Mr. Gaskins in the MSR program and the forfeiture of petitioner's GCT and ETA upon his release on MSR were in accord with the applicable regulations. *Id.* at 19, 22.

Petitioner's claims that the conditions of his release on MSR are unconstitutional are conclusory and, as noted by respondent, speculative.  For example, petitioner claimed in his Traverse that his wife would be forced to move from Italy to the United States at great expense.  However, in a letter sent in by his fiancé in support of his application for parole she stated that the plan was for her to move to this country and pursue her veterinary practice.  In any event, the administrative record provided by respondent indicates that petitioner's claims challenging particular conditions of his MSR release were not among those raised in his administrative appeals.  Petitioner

baldly alleges that he exhausted, but does not provide records of his administrative appeals showing that the particular challenges he makes to conditions in this action were exhausted. Petitioner seeks money damages based on some of these conditions challenges, but a request for damages is not appropriate relief in a habeas corpus petition.

In summary, the court finds that petitioner failed to exhaust remedies available in the military courts on at least one of his claims and that his action must be dismissed on that basis.  The court further finds that even petitioner could show exhaustion or total exhaustion were not required, Mr. Gaskins utterly fails to state a claim for relief in light of *Huschak*. Petitioner is not entitled to be "removed from supervised release" because his release on MSR is not shown to have been unlawful.  Accordingly, the court dismisses this petition and denies all relief.

Due to the foregoing disposition of this action, petitioner's Motion for Prohibitory Injunction is moot.

**IT IS THEREFORE BY THE COURT ORDERED** that this petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241 is dismissed and all relief is denied, and that petitioner's Motion for Prohibitory Injunction (Doc. 5) is denied as moot.

**IT IS SO ORDERED.**

DATED:  This 31st day of March, 2015, at Topeka, Kansas.




                                        s/RICHARD D. ROGERS
                                        United States District Judge